UNITED STATES, Appellee

v.

Claude F. WHITE, Jr., Airman Basic
U.S. Air Force, Appellant

No. 00-0002

Crim. App. No. 33583

United States Court of Appeals for the Armed Forces

Argued November 8, 2000

Decided May 2, 2001

GIERKE, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., and SULLIVAN, EFFRON, and BAKER, JJ., joined.
SULLIVAN, J., filed a concurring opinion.

Counsel

For Appellant:  Major Marc A. Jones (argued); Colonel Jeanne M.
    Rueth and Major Thomas R. Uiselt (on brief); Lieutenant
    Colonel Timothy W. Murphy and Lieutenant Colonel James R.
    Wise.

For Appellee:  Major Lance B. Sigmon (argued); Colonel Anthony P.
    Dattilo, Lieutenant Colonel Ronald A. Rodgers, and Major
    Harold M. Vaught (on brief); Captain Suzanne Sumner.

Military Judge:  Amy M. Bechtold

**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE PUBLICATION.**

Judge GIERKE delivered the opinion of the Court.

A general court-martial convicted appellant, pursuant to his pleas, of wrongfully using cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. The court-martial, composed of officer members, sentenced appellant to a bad-conduct discharge, confinement for 8 months, and partial forfeiture of pay for 8 months. The convening authority approved the adjudged sentence, and the Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

This Court granted review of the following issue:

> WHETHER APPELLANT WAS SUBJECTED TO CRUEL AND UNUSUAL PUNISHMENT WHILE IN POST-TRIAL CONFINEMENT.

For the reasons that follow, we affirm the decision below.

## I. Factual Background

Appellant has two convictions for wrongfully using cocaine. His first conviction, on July 27, 1998, was for using cocaine on or about November 17, 1997. The approved sentence from his first court-martial provided for a bad-conduct discharge, confinement for 2 months, and reduction to the lowest enlisted grade.

When appellant was processed into the confinement facility after his first court-martial, he was required to submit a urine sample for medical purposes. When this urine sample tested positive for cocaine, appellant was charged with wrongfully using cocaine between July 13-28, 1998, and pleaded guilty at his second court-martial on November 24, 1998. At this second court-martial, appellant did not raise any issues regarding his treatment while in confinement. The granted issue concerns the

conditions of appellant's confinement after his second

conviction.

In a clemency submission to the convening authority dated

February 12, 1999, after his second conviction, appellant made

the following allegations about the conditions of his

confinement:

> Sir, I initially entered confinement on 27 July 1998. Due to be released on 18 September, I was transferred to pre-trial confinement status. Then, with the sentence imposed on 24 November, I returned to the confinement facility. Though I had already in-processed once, I was made to do so again, solely because of the change in status. Sir, this "in-processing" is an ordeal. Since I have been in confinement there have been several four to six hour "in-processings" of inmates. Sometimes inmates will come in at 1600 hours and not finish with their "in-processing" until 0200. During this time the guards are yelling at the top of their lungs and trying to make the inmate make mistakes, so the process can go back to the beginning. It is excessive harassment and intimidation. While these sessions go on, it's impossible to get any sleep. Also a recent inmate was "in-processed" for six hours and then "re-inprocessed" the next day for another hour. A chaplain, Maj Flake, a former prison guard and chaplain at Fort Leavenworth, witnessed this session and called the guards on it. Following his complaint, we as inmates were threatened on 28 January 1999 by the NCOIC [noncommissioned officer-in-charge] not to talk to lawyers or chaplains anymore about the facility, or "there will be hell to pay." Directly after this incident, the NCOIC and the guards initiated what they called an "inspection." In reality, it was a flagrant intimidation session. They threw all the furniture over as well as the books and magazines and their racks. Beds and linens were flipped and thrown around. Clothing and personal items were seized from lockers and thrown all over the floor. Later, I was personally threatened by SrA [Senior Airman] Bruton, the night guard. He told me if I did not tell him what I knew about the other inmates they would try to make me have to stay longer than my sentence. Late last year, I also witnessed the same NCOIC, because he was mad, pick up an inmate and throw him on a table. He was briefly relieved of duties but soon returned.

Appellant also complained that, while in confinement, he had twice requested drug counseling or enrollment in Narcotics Anonymous, but received no response.  Major (Maj) David Walker, a staff psychiatrist at Lackland Air Force Base, where appellant was confined, requested clemency for appellant because the local, on-base substance abuse treatment program was unable to provide any treatment services for him.  Maj Walker stated that he had been treating appellant since July 1998, meeting with him every one to three weeks "to provide medication and supportive therapy due to diagnoses of major depression, substance dependence and narcissistic personality disorder."  Maj Walker stated that his treatment of appellant "has been restricted to medication management for his depressive symptoms and to supportive therapy in order to help him cope with incarceration and to decrease depressive symptoms and anxiety."  Maj Walker concluded his clemency request by stating that "[o]ptimal treatment for substance dependence should include narcotics anonymous."

Appellant requested the convening authority to reduce his confinement to time served.  The convening authority did not grant clemency but, instead, approved the adjudged sentence.

Before the Court of Criminal Appeals, appellant asserted that the conditions of his confinement constituted cruel and unusual punishment.  Additionally, in a handwritten affidavit, appellant asserted for the first time that he was not allowed to participate in Narcotics Anonymous because of his race.  He asserted that two other inmates, one white and one "white hispanic," were allowed to participate.  The Court of Criminal Appeals did not address the merits of his complaints, opining

4

only that it did not have jurisdiction to address his complaints, and that he failed to exhaust his administrative remedies.

## II.  Discussion

Before this Court, appellant repeats the complaints that he made to the court below.  He also argues that the Court of Criminal Appeals erred when it held that it lacked jurisdiction to decide the merits of his complaints.  Finally, he argues that he satisfied the requirement for exhausting his administrative remedies when he complained to the convening authority.

The Government argues that this Court lacks jurisdiction to decide the issue, and that appellant failed to exhaust his administrative remedies.  The Government further argues that, even if appellant's complaints are cognizable by this Court, appellant's treatment did not amount to cruel and unusual punishment.

We have no findings of fact by a military judge or the court below regarding appellant's complaints.  Nevertheless, we need not remand the case for factfinding if we can determine that the facts asserted, even if true, would not entitle appellant to relief.  See United States v. Ginn, 47 MJ 236, 248 (1997).  We review de novo the question whether the facts asserted by appellant would constitute a violation of Article 55, UCMJ, 10 USC § 855, or the Eighth Amendment of the Constitution.  2 Steven A. Childress & Martha S. Davis, Federal Standards of Review § 7.05 (3d ed. 1999).

### a.  Jurisdiction

On direct appeal, this Court "may act only with respect to the findings and sentence as approved by the convening authority

and as affirmed or set aside as incorrect in law by the Court of Criminal Appeals."  Art. 67(c), UCMJ, 10 USC § 867(c).  An appellant who asks this Court to review prison conditions must establish a "clear record" of both "the legal deficiency in administration of the prison and the jurisdictional basis for action." United States v. Miller, 46 MJ 248, 250 (1997).  Unlike civilians, military prisoners have no civil remedy for alleged constitutional violations.  United States v. Palmiter, 20 MJ 90, 93 n. 4 (CMA 1985), citing Chappell v. Wallace, 462 U.S. 296 (1983), and Feres v. United States, 340 U.S. 135 (1950).  Thus, they must rely on the prison grievance system, Article 138, UCMJ, 10 USC § 938, the Courts of Criminal Appeals, and this Court for relief.

On several occasions, this Court has sub silentio asserted its jurisdiction to determine if certain punishments violated the Eighth Amendment or Article 55.  See, e.g., United States v. Yatchak, 35 MJ 379 (CMA 1992); United States v. Lorance, 35 MJ 382 (CMA 1992); United States v. Valead, 32 MJ 122 (CMA 1991) (addressing issue whether confinement on bread and water violated Article 55 or the Eighth Amendment).  More recently, this Court has asserted its jurisdiction on direct appeal to consider whether posttrial conditions of confinement violated the Eighth Amendment or Article 55.  See United States v. Sanchez, 53 MJ 393 (2000) (sexual harassment at the hands of prison officials); United States v. Avila, 53 MJ 99 (2000) (improper maximum-custody confinement).

We now expressly hold that we have jurisdiction under Article 67(c) to determine on direct appeal if the adjudged and

approved sentence is being executed in a manner that offends the Eighth Amendment or Article 55.  Our statutory authority is to act "with respect to the findings and sentence."  This grant of authority encompasses more than authority merely to affirm or set aside a sentence.  It also includes authority to ensure that the severity of the adjudged and approved sentence has not been unlawfully increased by prison officials, and to ensure that the sentence is executed in a manner consistent with Article 55 and the Constitution.  See Sanchez, supra at 397 (Sullivan, J., dissenting, and Gierke, J., concurring).

Because this case is before us on direct appeal, we need not and do not determine the extent of our authority to review a collateral attack on the conditions of confinement.  We are not persuaded, however, by the Government's suggestion that jurisdiction is precluded by Clinton v. Goldsmith, 526 U.S. 529 (1999).  Goldsmith involved an amendment to a statute outside the UCMJ that eased restrictions on the authority to discharge officers administratively under a statute not within this Court's jurisdiction.  By contrast, the present case involves the imposition of punishment under the UCMJ in a case that is before us under the direct review procedure established by Congress.

### b.  Exhaustion of Administrative Remedies

"[A] prisoner must seek administrative relief prior to invoking judicial intervention.  In this regard, appellant must show us, absent some unusual or egregious circumstance, that he has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ, 10 USC § 938."

Miller, supra at 250, quoting United States v. Coffey, 38 MJ 290, 291 (CMA 1993).

In this case, appellant has furnished no evidence that he invoked the prisoner-grievance system. Instead, he complained to the convening authority. The convening authority was appellant's wing commander, but not the commander of the confinement facility or the Air Force Base on which the confinement facility was located. In addition, there is no evidence that appellant filed an Article 138 complaint.

Appellant avers that the same abuses occurred while he was in pretrial confinement. Nevertheless, he did not assert an Article 13, UCMJ, 10 USC § 813, violation at trial. Appellant also avers that a field-grade chaplain witnessed some of the abuses and "called the guards on it." He asserts that the chaplain's action did not terminate the abuses, but caused the guards to threaten the prisoners if they made any complaints to lawyers or chaplains. This threat apparently did not deter appellant, because he filed a complaint with the convening authority. The record does not reflect whether appellant knew the confinement facility did not fall under the command of the convening authority. The record does reflect that, notwithstanding the alleged threats, appellant continued to communicate with his military defense counsel regarding his request for enrollment in Narcotics Anonymous.

Without further factfinding, this record is inadequate to determine if appellant exhausted all measures reasonably available to him. It is also inadequate to determine if the circumstances of appellant's confinement were so unusual or

egregious that he could not avail himself of the Article 138 process.  However, our evaluation of the merits of appellant's complaints makes it unnecessary to determine if appellant has satisfied the requirement for exhaustion of administrative remedies.

### c.  Cruel and Unusual Punishment

Appellant asserts that the conditions of his confinement violated both the Eighth Amendment and Article 55.  The Eighth Amendment prohibits the infliction of "cruel and unusual punishment."  Article 55 prohibits the infliction of flogging, branding, marking, or tattooing, the use of irons, "except for the purpose of safe custody," and "any other cruel or unusual punishment."

The Articles of War preceding Article 55 prohibited "cruel and unusual punishment," but the phrase was changed to "cruel or unusual punishment" in Article 55.  See Article of War 41, Manual for Courts-Martial, U.S. Army, 1929 at 212, and 1949 at 284.  The legislative history of Article 55 provides no clue why the word "and" was changed to "or."   Indeed, when this Court discussed the newly-enacted Article 55 in United States v. Wappler, 2 USCMA 393, 396, 9 CMR 23, 26 (1953), it referred to Article 55 as prohibiting "cruel and unusual punishments."  Addressing the question whether a court-martial was authorized to impose confinement on bread and water, this Court explained the significance of Article 55 as follows:

> Although we do not believe that the proscription
> against punishments of this nature contained in the
> Constitution's Eighth Amendment--if applicable--would
> bar the punishment adjudged here, it is to be noted
> that the Amendment does not necessarily define the

> limits of "cruel and unusual," as used by Congress in
> Article 55.  Use of the phrase by Congress, therefore,
> raises a problem of legislative rather than
> constitutional construction.  Certainly Congress
> intended to confer as much protection as that afforded
> by the Eighth Amendment.  Additionally--at least to the
> extent of including the punishment involved here
> [confinement on bread and water]--we believe it
> intended to grant protection covering even wider
> limits.

Id.

This explanation is significant in several respects.  First, it reflects the uncertainty that existed at the time regarding the applicability of the Bill of Rights to the military.  Second, it recognizes the intent of Congress to extend the protections of the Eighth Amendment to the military.  Third, it recognizes the intent and authority of Congress to prohibit or limit the imposition of certain punishments that would not necessarily violate the Eighth Amendment.

The case before us does not involve an "unusual" punishment or one peculiar to military penology.  Instead, the issue is whether appellant's confinement was administered in a cruel or unusual manner.  Except in cases where we have discerned a legislative intent to provide greater statutory protections than the Eighth Amendment provides, we have applied the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55.  See Avila, 53 MJ at 101; cf. Yatchak, 35 MJ at 381 (holding that confinement on bread and water on crew member of ship undergoing long-term overhaul violated Article 55).  Thus, for the purposes of appellant's case, we perceive no significant differences between appellant's protections under the Eighth Amendment and those under Article 55.

In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court said that the framers' intent behind the Eighth Amendment was to prevent barbaric and torturous forms of punishment. In more recent history, the standard for what constitutes cruel and unusual punishment has developed into more than physical torture. Instead, the current standard is that the Eighth Amendment prohibits "punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society,' . . . or which 'involve the unnecessary and wanton infliction of pain[.]'" Id. at 102-03 (citations omitted). Conditions that violate the Eighth Amendment include "deliberate indifference to serious medical needs." Id. at 104-05.

In Farmer v. Brennan, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment "does not mandate comfortable prisons," but "neither does it permit inhumane ones[.]" The Court defined two factors that are necessary for an Eighth Amendment claim to succeed regarding conditions of confinement. First, there is an objective component, where an act or omission must result in the denial of necessities and is "objectively, 'sufficiently serious.'" Id. at 834, quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991). The second component is subjective, testing for a culpable state of mind. "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety[.]" Id., quoting Wilson, supra at 302-03.

In Freitas v. Ault, 109 F.3d 1335, 1339 (8th Cir. 1997), the court held that sexual harassment or abuse of an inmate by a guard sometimes might rise to the level of "unnecessary and

11

wanton infliction of pain" and, in those cases, may therefore give rise to an Eighth Amendment claim.  However, the court further held that

> [t]o prevail on a constitutional claim of sexual harassment, an inmate must . . . prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind.

Id., citing Hudson v. McMillian, 503 U.S. 1, 8 (1992).

Under the standard articulated by the Supreme Court in Farmer, supra, "the prison guards and officials must be consciously aware of the risk or danger to the inmate and choose to ignore it; they must have been aware of the harm or risk of harm caused appellant, and continued anyway."  Sanchez, 53 MJ at 396.

Appellant asserts that he was intimidated, threatened, and subjected to extended periods of "yelling."  He also describes incidents where personal property was thrown on the floor.  He describes one incident where another prisoner was assaulted.  He asserts that "it's impossible to get any sleep" while the verbal abuse goes on.  He fails, however, to assert any physical or psychological pain.  In Sanchez, this Court held that verbal sexual harassment of a female prisoner by male guards did not rise to the level of physical or psychological "pain" required to constitute an Eighth Amendment or Article 55 violation.  Verbal harassment, intimidation, or abuse, standing alone, does not constitute a constitutional violation, unless there is "well-established and clinically diagnosed" evidence of psychological pain.  Id.; see also Oltarzewski v. Ruggiero, 830 F.2d 136, 139

12

(9th Cir. 1987), citing Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985), McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983), and Ellingburg v. Lucas, 518 F.2d 1196, 1197 (8th Cir. 1975); Warburton v. Goord, 14 F.Supp 2d 289, 292 (W.D.N.Y. 1998) (harrassment or profanity alone, unaccompanied by any injury, "no matter how inappropriate, unprofessional, or reprehensible it might seem," not a violation of "any federally protected right").

Appellant also asserts that he was deprived of substance abuse treatment. The record reflects that appellant received psychiatric care, counseling, and medications from Maj Walker, and that Maj Walker stated that "optimal treatment" for appellant should include Narcotics Anonymous.

Denial of adequate medical attention can constitute an Eighth Amendment or Article 55 violation. Sanchez, supra at 396. A failure to provide basic psychiatric and mental health care can constitute deliberate indifference. Harris v. Thigpen, 941 F.2d 1495 (11th Cir. 1991). However, it is not constitutionally required that health care be "perfect" or "the best obtainable." Id. at 1510. Appellant was entitled to reasonable medical care, but not the "optimal" care recommended by Maj Walker.

Appellant's allegation that his race was the basis for not permitting him to participate in Narcotics Anonymous is based on his representation that two other inmates -- one white and the other "white hispanic" -- were allowed to participate. Even accepting appellant's representation as to the two inmates who participated, it is insufficient, standing alone, to raise an issue whether appellant was denied similar participation because of his race.

We hold that appellant's other complaints, if true, do not amount to either a constitutional or statutory violation in derogation of the Eighth Amendment or Article 55.  Our holding is limited to the question whether the facts asserted by appellant constitute a constitutional or statutory violation.  Any further determination as to whether appellant's allegations are true, and if so, what measures should be taken in terms of accountability and responsibility, are matters for consideration by appropriate supervisory personnel.

## III.  Decision

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

<u>United States v. White</u>, 00-0002/AF

SULLIVAN, Judge (concurring):

I am heartened that this Court has finally and squarely held in this case and also in <u>United States v. Erby</u>, No. 00-0550, ___ MJ ___ (2001), that the lower courts have the duty and the jurisdiction to review whether the sentence imposed by a court-martial is being unlawfully increased by prison officials.  I have for some time believed this to be true.  <u>United States v. Sanchez</u>, 53 MJ 393, 397 (2000) (Sullivan, J., dissenting).