# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 38890**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Willie J. HOLT III**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 23 February 2017

————————————

*Military Judge:* Matthew P. Stoffel.

*Approved sentence:* Dishonorable discharge, confinement for 25 years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 4 May 2015 by GCM convened at Beale Air Force Base, California.

*For Appellant:* Major Jeffrey A. Davis, USAF.

*For Appellee:* Lieutenant Colonel Nurit Anderson, USAF; Lieutenant Colonel Roberto Ramírez, USAF; and Gerald R. Bruce, Esquire.

Before MAYBERRY, SPERANZA, and JOHNSON, *Appellate Military Judges*.

Judge SPERANZA delivered the opinion of the court, in which Senior Judge MAYBERRY and Judge JOHNSON joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

SPERANZA, Judge:

A military judge sitting as a general court-martial convicted Appellant, consistent with his pleas pursuant to a pretrial agreement, of two specifications of

aggravated sexual contact with a child on divers occasions, in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2008); two specifications of sexual assault of a child on divers occasions, in violation of Article 120b, UCMJ, 10 U.S.C. § 920b (2012); and two specifications of sexual abuse of a child on divers occasions, also in violation of Article 120b, UCMJ, 10 U.S.C. § 920b (2012). The military judge sentenced Appellant to a dishonorable discharge, confinement for 25 years, forfeiture of all pay and allowances, and reduction to the grade of E-1. In accordance with the pretrial agreement, the convening authority approved the adjudged sentence.

Before us, Appellant asserts that: (1) his conditions in post-trial confinement while being held in a civilian confinement facility merit meaningful relief, and (2) his sentence to 25 years of confinement was inappropriately severe in comparison to closely related cases.[1] We disagree and affirm.

## I. BACKGROUND

BA became Appellant's stepdaughter when she was 7 years old. After BA turned 11 years old, Appellant committed various sexual offenses against her, including oral sex and twice penetrating her vulva with his penis, over a period of three years.

## II. DISCUSSION

### A. Post-trial Confinement Conditions

Before trial, Appellant had surgery on his lower leg. After trial, Appellant was confined in a local civilian facility for approximately 36 days until he was transferred to a military detention facility.

Over two months after he had been transferred to the military detention facility, Appellant complained about the conditions of his confinement at the civilian facility in his request for clemency. Appellant asked the convening authority to grant him three-for-one credit for each day spent in civilian confinement. Appellant also asked the convening authority to reduce his adjudged confinement to 20 years. The convening authority considered the matters submitted by Appellant and his counsel and approved the adjudged sentence.

Appellant maintains, in an affidavit submitted on appeal, that he was isolated, for no stated reason, in the maximum security section of the facility where he was permitted only one hour per day of free time. Appellant also claims the "filthy" conditions within his cell, his inability to clean his wounds,

---

[1] Appellant raises his second assignment of error pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

and the lack of timely medical care caused a surgical incision to become infected. This infection, according to Appellant, caused Appellant a "tremendous amount of pain while [he] had to sit in [his] cell and wait to be taken to the military hospital for care." Appellant concludes:

> Being held in isolation for almost 40 days at the civilian facility, particularly with my medical condition and particularly since this was my first experience in prison, was psychologically traumatic and overwhelming. It was made worse by the fact that I had no idea why I was being held in this manner, when it would end, and when I would be transferred to a military facility, where I expected I would not be held in isolation.

In response, the Government provided affidavits from the base's noncommissioned-officer-in-charge of confinement and an officer from the civilian confinement facility that described the conditions of Appellant's confinement at the civilian facility.

Appellant was placed in the civilian confinement facility pursuant to a memorandum of understanding (MOU) between the base and county. The entire civilian facility is considered a "maximum security" jail. Per the MOU's terms, Appellant was prohibited from being housed with or near foreign nationals. Due to Appellant's medical conditions related to surgery, Appellant was housed in the civilian facility's Americans with Disabilities Act (ADA)-compliant cell. This cell was located within the facility's single cell unit. Apart from being ADA-compliant, Appellant's cell was standard-size with standard furnishings, including a standard mattress. Like all other inmates placed in this specific housing unit, Appellant was on 22-hour lockdown. Accordingly, Appellant was permitted one hour in the outdoor yard and one hour to use the dayroom. Like all other inmates within the facility, Appellant ate his meals in his cell. Custody staff at the facility interacted regularly with Appellant. Air Force personnel performed regular health and welfare checks. Appellant was transported out of the civilian facility to receive medical care consistent with the advice of the medical staff. Appellant was returned to the facility after his medical appointments.

The civilian facility is inspected biannually by the state's board of corrections, the county's health department, environmental health, and a dietician. Accordingly, administrative "logs," jail conditions, and inmate living areas are inspected. The facility passed its prior inspections and was preparing for upcoming inspections at or near the time of Appellant's confinement. Inmates at the facility are responsible for the cleanliness of their living spaces and are provided the tools and time to meet this responsibility.

Appellant and his counsel filed no grievances with civilian or military authorities regarding the conditions of his confinement. Appellant first raised his complaints, without identifying any legal error, as part of his clemency submission to the convening authority.

Appellant now invites us to exercise our "broad Article 66(c) authority" consistent with *United States v. Gay*, 74 M.J. 736, 740, 742 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), to provide him the same relief the convening authority denied. Appellant claims that his "post-trial solitary confinement conditions [at the civilian confinement facility] were unacceptable, and he should be awarded [three-for-one] days of credit towards his sentence to confinement."[2] Appellant argues that such relief "will provide Appellant with meaningful relief and at the same time incentivize the government to ensure that post-trial confines [sic] are confined in acceptable conditions when they are being confined in civilian confinement facilities."

This court "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). In *Gay*, this court invoked Article 66(c) to grant the appellant sentencing relief even in the absence of cruel or unusual punishment in violation of the Eighth Amendment, U.S. CONST. amend. VIII, and Article 55, UCMJ, 10 U.S.C. § 855. 74 M.J. at 742. The Court of Appeals for the Armed Forces (CAAF) held that this court did not abuse its discretion in doing so. *Gay*, 75 M.J. at 269. However, the CAAF noted that *Gay* involved unique facts driven by legal errors in the post-trial process that included both a violation of the appellant's rights under Article 12, UCMJ, 10 U.S.C. § 812, and the ordering of solitary confinement by an Air Force official where an alternative solution was available. *Id.* Significantly, the CAAF emphasized, "In reaching this conclusion, we do not recognize unlimited authority of the Courts of Criminal Appeals to grant sentence appropriateness relief for any conditions of post-trial confinement of which they disapprove." *Id.*

Only in very rare circumstances do we anticipate exercising our Article 66(c) authority to grant sentence relief based upon conditions of post-trial confinement when there is no violation of the Eighth Amendment or Article 55, UCMJ. *United States v. Milner*, No. ACM S32338, 2017 CCA LEXIS 84 (A.F. Ct. Crim. App. 7 Feb. 2017) (unpub. op.); *United States v. Garcia*, No. ACM 38814, 2016 CCA LEXIS 490 (A.F. Ct. Crim. App. 16 Aug. 2016) (unpub. op.); *cf*. *United States v. Nerad*, 69 M.J. 138, 145–47 (C.A.A.F. 2010) (holding that

---

[2] Appellant does not contend that the conditions of his post-trial confinement amounted to cruel or unusual punishment in violation of the Eighth Amendment, U.S. CONST. amend. VIII, or Article 55, UCMJ, 10 U.S.C. § 855, and we find no such violation.

despite our significant discretion in reviewing the appropriateness of a sentence, this court may not engage in acts of clemency.) This case does not present such circumstances.

Appellant also does not present any evidence to suggest he attempted to utilize any grievance process. Our superior court has emphasized, "A prisoner must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions." *United States v. Wise*, 64 M.J. 468, 469 (C.A.A.F. 2007). This requirement "promot[es] resolution of grievances at the lowest possible level [and ensures] that an adequate record has been developed [to aid appellate review]." *Id.* at 471 (quoting *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)). An appellant must show that "absent some unusual or egregious circumstance . . . he has exhausted the prisoner-grievance system [in his detention facility] and that he has petitioned for relief under Article 138." *Id.* (quoting *United States v. White*, 54 M.J. 469, 472 (C.A.A.F. 2001)). Appellant failed to make such a showing.

Moreover, the particular conditions of Appellant's post-trial confinement do not rise to the level of being so oppressive or disgraceful as to warrant sentence relief. Appellant was subjected to the standard treatment and conditions applicable to similarly situated inmates. There is no evidence he was subjected to physical or mental abuse, singled out for unusual treatment, denied appropriate medical attention, or refused any other necessity. Nor is there evidence the conditions of his confinement impacted his access to counsel or any other post-trial due process right. Thus, Appellant's complaints can be summarized this way: the civilian confinement facility's standard conditions, under which he was confined, did not meet his personal standards. Such assertions do not warrant the extraordinary use of our Article 66(c) power to grant sentence relief.

## B. Sentence Appropriateness

According to the terms of Appellant's pretrial agreement, the convening authority agreed to disapprove confinement in excess of 25 years. The military judge sentenced Appellant *inter alia* to 25 years of confinement. Despite the adjudged sentence falling within the parameters of the bargained-for terms of the agreement, Appellant nevertheless "believes his sentence to 25 years of confinement was inappropriately severe, particularly in comparison to sentences imposed in closely related cases." Accordingly, Appellant asks us to reduce his sentence to 20 years of confinement.

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial."

*United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *Nerad*, 69 M.J. at 148. We are required to engage in sentence comparison only "in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). Appellant bears the burden of demonstrating that cases are "closely related" to his case and that the sentences are "highly disparate." *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). If the appellant meets his burden to demonstrate closely related cases involve highly disparate sentences, the Government "must show that there is a rational basis for the disparity." *Id.*

Appellant argues that the following cases are closely related to his case and that we should consider these cases in evaluating the appropriateness of his sentence: *United States v. Ewan*, No. ACM 38588, 2015 CCA LEXIS 459 (A.F. Ct. Crim. App. 27 Oct. 2015) (unpub. op.); *United States v. Brown*, appeal docketed, No. ACM 38864 (A.F. Ct. Crim. App. 11 Aug. 2015); *United States v. Drees*, No. ACM 37942, 2012 CCA LEXIS 446 (A.F. Ct. Crim. App. 21 Nov. 2012) (unpub. op.); *United States v. Mullen*, No. ACM 37959, 2011 CCA LEXIS 356 (A.F. Ct. Crim. App. 13 Dec. 2011) (unpub. op.); *United States v. Brown*, No. ACM 37851, 2011 CCA LEXIS 213 (A.F. Ct. Crim. App. 16 Nov. 2011) (unpub. op.). However, the cases cited by Appellant do not involve any co-actors in Appellant's offenses, a common or parallel scheme, or any other direct nexus to Appellant's case. *See Lacy*, 50 M.J. at 288 (noting that examples of "closely related cases" include "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared."). Because these cases are not closely related to Appellant's, disparities between the adjudged and approved sentences in those cases and Appellant's sentence are attributed to the individual facts of each case. Accordingly, Appellant has failed to demonstrate that these case are closely related to his and that the sentences approved in those cases are highly disparate from his sentence. *Id.*

Although we decline Appellant's invitation to engage in sentence comparisons, we have given individualized consideration to this particular Appellant, his record of service, the nature and seriousness of his offenses, the terms of his pretrial agreement with the convening authority, and all other matters contained in the record of trial, and find that his sentence is not inappropriately severe. Appellant was BA's stepfather. Rather than treating BA as the 11-to-14 year-old child she was, he decided to use her to gratify his sexual desires over a period of years. Appellant's misconduct was both recurring and deeply destructive to a child who trusted him as a father. As such, we find,

based on the entire record, that the approved sentence for this noncommissioned officer is not unduly harsh or otherwise inappropriate.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court