# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————

**No. ACM 39607**

————————

**UNITED STATES**
*Appellee*

v.

**JACOB A. DEFALCO**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————

Appeal from the United States Air Force Trial Judiciary

Decided 21 May 2020

————————

*Military Judge:* Charles G. Warren.

*Approved sentence:* Bad-conduct discharge, confinement for 15 months, forfeiture of all pay and allowances for 15 months, reduction to E-1, and a reprimand. Sentence adjudged 26 September 2018 by GCM convened at McConnell Air Force Base, Kansas.

*For Appellant:* Major David A. Schiavone, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel Brian C. Mason, USAF; Major Anne M. Delmare, USAF.

Before MINK, LEWIS, and D. JOHNSON, *Appellate Military Judges.*

Senior Judge MINK delivered the opinion of the court, in which Judge LEWIS and Judge D. JOHNSON joined.

————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————

MINK, Senior Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas pursuant to a pretrial agreement (PTA), of one specification of wrongful use of a controlled substance (cocaine); one specification of wrongful use of a controlled substance (3,4-methylenedioxymethamphetamine, also referred to as "MDMA") on divers occasions; and one specification of wrongful distribution of a controlled substance (MDMA), in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a. Appellant also pleaded guilty to one specification of knowing and wrongful possession of child pornography in violation of Article 134, UCMJ, 10 U.S.C. § 934.[1,2] The adjudged and approved sentence consisted of a bad-conduct discharge, confinement for 15 months, forfeiture of all pay and allowances for 15 months, reduction to the grade of E-1, and a reprimand.[3]

The sole issue raised by Appellant on appeal is whether he is entitled to sentence relief because the conditions of his post-trial confinement violated his rights under the Eighth Amendment to the United States Constitution[4] and Article 55, UCMJ, 10 U.S.C. § 855, or, alternatively, because his post-trial confinement conditions rendered his sentence inappropriately severe pursuant to *United States v. Gay*, 75 M.J. 264 (C.A.A.F. 2016).[5] We find no prejudicial error and affirm the findings and sentence.

## I. BACKGROUND

In August 2017, Appellant met AG, a 15-year-old civilian female, who told him that she was 17 years old. Appellant and AG began dating and engaged in sexual activity. Their sexual relationship continued even after AG told Appellant that she was actually 15 years old. Using his cellphone and the application

---

[1] Unless otherwise noted, all references in this opinion to the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] Appellant pleaded not guilty to one specification alleging wrongful use of Lisdexamfetamine on divers occasions in violation of Article 112a, UCMJ, and three specifications of sexual assault of a child on divers occasions in violation of Article 120b, UCMJ, 10 U.S.C. § 920b, each of which the convening authority withdrew and dismissed after announcement of sentence in accordance with the terms of the PTA. Appellant also pleaded not guilty to a specification alleging wrongful production of child pornography, in violation of Article 134, UCMJ, which was withdrawn and dismissed after announcement of sentence.

[3] The adjudged sentence was less than the sentence limitation contained in the PTA.

[4] U.S. CONST. amend. VIII.

[5] Appellant personally raised this issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

Snapchat, Appellant recorded three videos of himself and AG engaged in various sexual acts. Appellant then possessed the three sexually explicit videos, which he knew were child pornography, on his cellphone.

In October 2017, while attending a party with AG, Appellant purchased two pills of MDMA from A1C NW. Appellant consumed one of the pills and AG consumed the other pill. In early to mid-November 2017, Appellant purchased three more pills of MDMA from A1C NW. Appellant gave one of the pills to AG as a present for her sixteenth birthday, and he consumed the other two pills himself. In addition, on or about 16 November 2017, while attending a party with AG at A1C NW's home, Appellant snorted cocaine.

In December 2017, Appellant's use of cocaine and MDMA was discovered when he tested positive for the drugs as the result of a random urinalysis conducted on 21 November 2017. During the ensuing investigation into his drug offenses, Appellant consented to a search of his vehicle, dormitory room, and cellphone. Investigators from the Air Force Office of Special Investigations then found the videos of child pornography during the search of his cellphone which depicted Appellant engaged in sexual activity with AG.

## II. DISCUSSION

Appellant argues his confinement conditions at the Naval Consolidated Brig in Charleston, South Carolina (NAVCONBRIG Charleston) were cruel and unusual under the Eighth Amendment and Article 55, UCMJ. He further argues that even in the absence of an Eighth Amendment or Article 55, UCMJ, violation, his confinement conditions rendered his sentence inappropriately severe, warranting relief under Article 66(c), UCMJ, 10 U.S.C. § 866(c). We disagree.

### A. Additional Background

After his court-martial on 26 September 2018, Appellant was confined at NAVCONBRIG Charleston. During the summer of 2019, Marine Corps Lance Corporal (LCpl) BF began performing duties as a guard at the prison.

In a declaration submitted to this court in support of his assignment of error, Appellant asserts that LCpl BF "repeatedly harassed [him] verbally and physically" during his time in confinement. Specifically, Appellant asserts that from their first meeting, LCpl BF asked him questions that one "would expect on a first date" that made Appellant uncomfortable and seemed like LCpl BF was "flirting" with him. Appellant also asserts that LCpl BF "took any opportunity" to pat him down, "aggressively ran his hands between [Appellant's] thighs and over [his] buttocks, squeezed [his] shoulders, and grabbed [his] penis twice." Appellant also stated that he was released from confinement on parole on 14 October 2019 which ended on 25 December 2019.

Appellant attached a copy of a six-page handwritten, undated, document to his declaration, which he states he "wrote for the lead investigator" for NAVCONBRIG Charleston and "submitted it to the investigator."[6] Appellant declares that the handwritten attachment "describes in more detail the interactions" he had with LCpl BF. In the handwritten attachment, Appellant claims LCpl BF looked at him in the shower longer than necessary; gave Appellant his Snapchat handle and told Appellant to add him; stared at him; "accidentally" touched him; smiled at him; gave Appellant his phone number; suggested that they "hang out" in Charleston after Appellant's release from confinement, and suggested that they go out to dinner and go back to LCpl BF's place afterwards to "have some fun;" told another inmate to tell Appellant that LCpl BF had bought Appellant a "present;" winked at Appellant; and told Appellant that he had bought Appellant an Apple Watch as a "getting out of prison gift" that Appellant could have after Appellant "hang[s] out" at LCpl BF's place, "insinuating a sexual encounter."

In response to Appellant's assertions regarding his post-trial confinement conditions, the Government obtained and submitted declarations from Mr. MT, a criminal investigator assigned to NAVCONBRIG Charleston, and Mr. TS, the Director of the Air Force Security Protection Directorate and the Chair of the Air Force Clemency and Parole Board. Attached to Mr. MT's declaration was his report of investigation into the allegation that LCpl BF planned to purchase an Apple Watch for Appellant, and the Incident Report of the Prison Rape Elimination Act[7] (PREA) Review Board at NAVCONBRIG Charleston conducted to evaluate LCpl BF's actions with Appellant and another inmate, MG. Attached to Mr. TS's declaration were four documents pertaining to decisions regarding Appellant's Parole and Mandatory Supervised Release.

In his declaration, Mr. MT stated that on 13 September 2019 he initiated a formal investigation after another NAVCONBRIG Charleston inmate, MG, reported that LCpl BF had told him that LCpl BF was buying an Apple Watch for Appellant. LCpl BF was then removed from his position at NAVCONBRIG Charleston and had no further interaction with Appellant while Appellant remained confined at NAVCONBRIG Charleston. Mr. MT interviewed LCpl BF on 17 September 2019. LCpl BF admitted that he had an "inappropriate relationship" with Appellant as well as two other inmates; that he had offered to socialize with Appellant after Appellant's release from confinement; that he planned to purchase an Apple Watch for Appellant but changed his mind; and that he told Appellant that he would "f**k" him after Appellant's release from

---

[6] Although the handwritten statement is undated, Appellant references the dates 9 September and 13 September in his statement.

[7] *See* Prison Rape Elimination Act of 2003, 34 U.S.C. §§ 30301, *et. seq.*

confinement if Appellant was "not in a relationship." Notably, Mr. MT's report of investigation does not include any statement from Appellant and Mr. MT's declaration does not indicate that Appellant made a statement to him during the investigation.

A PREA Incident Review Board "convened on 23 September 2019 to determine if allegations made by Prisoner [MG] were substantiated, unsubstantiated, or unfounded." However, the subject line of the PREA review reads slightly differently showing the findings address "ALLEGATIONS BY PRISONER [MG] AND [APPELLANT]." "The PREA Incident Review Board considered whether the allegation or investigation indicated a need to change policy or practice to better prevent, detect, or respond to sexual misconduct . . . ." Relying on Mr. MT's investigation and supporting documents, the Board "determined no action was required."

The Board did, however, make two findings. The first finding was that the allegation "of staff-on-prisoner voyeurism was unfounded." The Board found the "investigation clearly demonstrated that staff voyeurism did not occur and that facility staff conducted themselves in accordance with policy and procedure." The Board's second finding was "[s]taff sexual harassment was determined to be repeated and sexual abuse was in the form of solicitation for sex after a prisoner's release from confinement ([Appellant]).[8] The Board noted that the "Naval Criminal Investigative Service was informed."

Mr. TS's declaration stated that Appellant was released from NAVCONBRIG Charleston on 14 October 2019—his minimum release date—on Mandatory Supervised Release until the end of his sentence on 25 December 2019. We considered the declarations of Appellant, Mr. MT, and Mr. TS in resolving Appellant's claims regarding his post-trial confinement conditions.[9]

---

[8] Mr. MT's report of investigation states the Board "substantiated for sexual assault, substantiated for sexual abuse and found voyeurism unsubstantiated within PREA guidelines." From our review of the Board's report which is attached to the record of trial, we observe no findings on "sexual assault" and the appropriate characterization of the voyeurism allegation is "unfounded." Mr. MT's report of investigation correctly identifies the substantiation of sexual abuse.

[9] All of the information in Appellant's record of trial regarding the conditions of his post-trial confinement was raised after the convening authority took action on Appellant's sentence and was submitted by the parties and ordered attached to the record by this court. *See United States v. Jessie*, __ M.J. __ , No. 19-0192, 2020 CAAF LEXIS 188 (C.A.A.F. 6 Apr. 2020) (citation omitted) (in which the Court of Appeals for the Armed Forces (CAAF) recognized the authority of a Court of Criminal Appeals to consider matters outside the record, such as the affidavits in this case, when resolving

## B. Law and Analysis

To the extent there are contradictions between Appellant's declaration and those of Mr. MT and Mr. TS, we considered whether a post-trial evidentiary hearing was required to resolve a factual dispute. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967). We are convinced such a hearing is unnecessary. Even if we resolve the contradictions in Appellant's favor, the alleged conditions would not result in our granting relief. *Ginn*, 47 M.J. at 248.

### 1. Cruel and Unusual Punishment

We review de novo whether an appellant has been subjected to impermissible post-trial confinement conditions in violation of the Eighth Amendment or Article 55, UCMJ. *United States v. Wise*, 64 M.J. 468, 473 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001)). Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, we apply "the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, except in circumstances where . . . legislative intent to provide greater protections under [Article 55]" is apparent. *United States v. Avila*, 53 M.J. 99, 101 (C.A.A.F. 2000) (citation omitted). "[T]he Eighth Amendment prohibits two types of punishments: (1) those 'incompatible with the evolving standards of decency that mark the progress of a maturing society' or (2) those 'which involve the unnecessary and wanton infliction of pain.'" *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976)). As the Supreme Court has explained, "[t]he Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

Appellant has the burden to establish a violation of the Eighth Amendment by demonstrating:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [an appellant]'s health and safety; and (3) that [an appellant] "has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ . . . ."

---

allegations of cruel and unusual punishment pursuant to the Eighth Amendment and Article 55, UCMJ).

*Lovett*, 63 M.J. at 215 (footnotes omitted) (quoting *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)).

"[A] prisoner must seek administrative relief prior to invoking judicial intervention" with respect to concerns about post-trial confinement conditions. *Wise*, 64 M.J. at 471 (alteration in original) (quoting *White*, 54 M.J. at 472). "This requirement 'promot[es] resolution of grievances at the lowest possible level [and ensures] that an adequate record has been developed [to aid appellate review].'" *Id.* (alterations in original) (quoting *Miller*, 46 M.J. at 250); *see also United States v. McPherson*, 73 M.J. 393, 396–97 (C.A.A.F. 2014). "Absent some unusual or egregious circumstance," an appellant must both exhaust the grievance system at the confinement facility as well as petition for relief under Article 138, UCMJ. *Wise*, 64 M.J. at 469 (citing *White*, 54 M.J. at 472).

In this case, Appellant did not seek redress through the grievance system at NAVCONBRIG Charleston or petition for relief under Article 138, UCMJ. Though Appellant declares that he provided a multi-page, detailed statement describing his interactions with LCpl BF to Mr. MT, that statement is not included in Mr. MT's report of investigation. Instead, Mr. MT's investigation arose from an allegation made by another inmate, MG, and not by any complaint or allegation made by Appellant himself. Relying on our decision in *United States v. McGriff*, No. ACM 39306, 2018 CCA LEXIS 567 (A.F. Ct. Crim. App. 11 Dec. 2018) (unpub. op.), *rev. denied*, 78 M.J. 487 (C.A.A.F. 2019), Appellant argues that he satisfied the requirement to exhaust administrative remedies by providing his statement to Mr. MT. As Appellant correctly states, we recognized that "the exhaustion of remedies requirement serves to 'promot[e] resolution of grievances at the lowest possible level . . . [and] to ensure that an adequate record has been developed.'" *Id.* at *22 (alterations in original) (quoting *Miller*, 46 M.J. at 250). We agree, however, with the Government that Appellant's reliance on *McGriff* is misplaced.

In *McGriff*, an HIV-positive prison guard infected with gonorrhea engaged in consensual sexual relations with the appellant without informing the appellant of his condition. *Id.* at *21. As soon as the appellant became aware that he had contracted gonorrhea, he reported the actions of the guard to prison authorities and a criminal investigation followed. *Id.* Upon review, we held that the "unusual circumstances" of the case obviated the need to exhaust administrative remedies because the appellant reported the prison guard's actions to authorities immediately. *Id.* at *23.

We find no such "unusual circumstances" in Appellant's case. According to Appellant, the comments and actions of LCpl BF began as soon as LCpl BF arrived at NAVCONBRIG Charleston in the summer of 2019. However, Appellant never initiated a grievance or complaint against LCpl BF. It was only after another inmate filed a complaint in September 2019 that Mr. MT began to

investigate. Once MG filed his complaint, LCpl BF was immediately removed as a guard from the prison. Appellant's declaration is silent on when he provided his handwritten statement to Mr. MT and the statement itself is undated. Mr. MT's declaration and his report of investigation do not reference Appellant's written statement. Under these circumstances, we do not know what remedial action—if any—might have been taken if Appellant had presented his claims to either the confinement facility or his chain of command at any time prior to MG's complaint. Far from exhausting the prisoner-grievance system and the Article 138, UCMJ, complaint process, Appellant did not attempt to utilize either. In failing to do so, Appellant deprived both the NAVCONBRIG Charleston and his command the opportunity to address the actions of LCpl BF that Appellant detailed in his statement. We find no "unusual or egregious circumstance" excusing Appellant's failure to exhaust his administrative remedies. *See Wise*, 64 M.J. at 471. Therefore, Appellant is entitled to no relief under either the Eighth Amendment or Article 55, UCMJ.

### 2. Article 66, UCMJ—Sentence Appropriateness Review

Under Article 66(c), UCMJ, we have broad authority and the mandate to approve only so much of the sentence as we find appropriate in law and fact and may, therefore, grant sentence relief, without finding a violation of the Eighth Amendment or Article 55, UCMJ. *See United States v. Gay*, 74 M.J. 736, 742 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016); *see also United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002). In considering Article 66(c)-based claims, we have declined to require appellants to demonstrate they have previously exhausted administrative remedies prior to seeking judicial relief. *See United States v. Henry*, 76 M.J. 595, 610 (A. F. Ct. Crim. App. 2017). We instead consider the entire record[10] and typically give "significant weight" to an appellant's failure to exhaust those remedies before requesting judicial intervention. *Id.*

"Only in very rare circumstances" do we exercise our Article 66(c) authority to grant sentence relief based upon conditions of post-trial confinement when there is no violation of the Eighth Amendment or Article 55, UCMJ. *United States v. Ferrando*, 77 M.J. 506, 517 (A.F. Ct. Crim. App. 2017) (citations omitted); *cf. United States v. Nerad*, 69 M.J. 138, 146–47 (C.A.A.F. 2010) (holding

---

[10] We assume, without deciding, that we may consider the same affidavits we considered to resolve Appellant's claim under the Eighth Amendment and Article 55, UCMJ, to determine whether Appellant's sentence is inappropriately severe. *See, e.g., McGriff*, 2018 CCA LEXIS 567, at *24–25; s*ee also United States v. Jacinto*, ___ M.J. ___, No. 201800325, 2020 CCA LEXIS 136, at *42–43 (N.M. Ct. Crim. App. 30 Apr, 2020) (in which our sister court recently held that Article 66, UCMJ, jurisdiction in "ultimately approv[ing] a sentence 'on the basis of the entire record' . . . could easily include items attached to the record on appeal").

that, despite our significant discretion in reviewing the appropriateness of a sentence, this court may not engage in acts of clemency).

As a result of the allegation MG made on 13 September 2019, LCpl BF was removed from his position at the confinement facility and had no other interactions with Appellant during the remainder of the time he was confined there. As discussed above, prison officials substantiated allegations of sexual abuse of Appellant and repeated sexual harassment. Mr. MT's declaration also addressed "[p]risoner complaints" that LCpl BF conducted "inappropriate frisk searches." Mr. MT declared these complaints were unsubstantiated. Mr. MT did indicate that LCpl BF should not have limited his frisk searches to "prisoners whose names he knew" based on "regulations at the Brig" and should have instead "selected at random based on Daily Security Measures" giving the example of "every third and sixth prisoner in a row."

Clearly, LCpl BF's undisputed sexual abuse of Appellant and repeated sexual harassment were unprofessional and inappropriate and could foreseeably cause Appellant or any other similarly-situated inmate to feel uncomfortable, maltreated, and harassed. Still, we give "significant weight" to Appellant's failure to exhaust his administrative remedies before requesting judicial intervention. *See Henry*, 76 M.J. at 610.

The relevant question under Article 66(c), UCMJ, is whether Appellant's confinement conditions rendered his sentence inappropriately severe. In *United States v. Gay*, cited by Appellant as a basis for relief under Article 66(c), UCMJ, the United States Court of Appeals for the Armed Forces held that this court did not abuse its discretion in granting relief in *Gay* but pointed to the unique facts and legal errors in that case and explained, "[i]n reaching this conclusion, we do not recognize unlimited authority of the Courts of Criminal Appeals to grant sentence appropriateness relief for any conditions of post-trial confinement of which they disapprove." 75 M.J. at 269.

As disturbing and unpleasant as Appellant's confinement conditions—in the form of LCpl BF's actions and comments—were, they did not rise to the level of an Eighth Amendment or Article 55, UCMJ, violation which requires a denial of "the minimal civilized measure of life's necessities" or "'deliberate indifference' to inmate health or safety." *Avila*, 53 M.J. at 101 (quoting *Farmer*, 511 U.S. at 834). We do not find the "very rare circumstances" exist in Appellant's case to exercise our Article 66(c) authority to grant sentence relief based upon conditions of post-trial confinement without a violation of the Eighth Amendment or Article 55, UCMJ. *See Ferrando*, 77 M.J. at 517.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.[11]

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[11] We note three errors in the court-martial order (CMO). First, in Specification IV of Charge I, the words "on divers occasions" are erroneously included in the specification and must be deleted. Second, in Specification 2 of Charge II is erroneously listed as Specification 3 and vice versa. Finally, in the Specification of Charge III, the offense of wrongful production of child pornography was withdrawn and dismissed, a fact which was omitted from the CMO. We direct a corrected CMO to remedy these errors.