# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39261**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Linley B. LEMBURG**[1]
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 30 August 2018

———————————

*Military Judge:* Ryan A. Hendricks.

*Approved sentence:* Dishonorable discharge, confinement for 30 days, forfeiture of $1,066.00 pay per month until execution of the discharge, reduction to the grade of E-1, and a reprimand. Sentence adjudged 10 April 2017 by GCM convened at MacDill Air Force Base, Florida.

*For Appellant:* Major Todd M. Swensen, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Captain Anne M. Delmare, USAF; Mary Ellen Payne, Esquire.

Before MAYBERRY, HARDING, and POSCH, *Appellate Military Judges.*

Judge POSCH delivered the opinion of the court, in which Chief Judge MAYBERRY and Senior Judge HARDING joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

[1] *In re* Linley Benson Lemburg, Case No. 2017-DR-3176 (Fla. Cir. Ct. 5th Cir. Sep. 25, 2017) (granting Petition for Change of Name to William Michael Robertson).

———————————

POSCH, Judge:

In accordance with Appellant's plea pursuant to a pretrial agreement, a general court-martial composed of a military judge found Appellant guilty of desertion in time of war in violation of Article 85, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 885. The military judge sentenced Appellant to a dishonorable discharge, confinement for 15 years, forfeiture of all pay and allowances, reduction to the grade of E-1, a reprimand, a fine in the amount of $2,250.00, and in the event the fine is not paid, to be confined for an additional six months. Consistent with the terms of the pretrial agreement, the convening authority approved only 30 days of confinement and credited Appellant for the 21 days he had been restricted to MacDill Air Force Base (AFB), Florida, under conditions tantamount to confinement.[2] The convening authority approved the dishonorable discharge, forfeiture of $1,066.00 pay per month until execution of the discharge, reduction to the grade of E-1, and a reprimand. The convening authority did not approve the fine.

Appellant raises two issues on appeal: (1) that conditions of his post-trial confinement warrant sentence relief and (2) that incomplete and inaccurate advice to the convening authority in the Staff Judge Advocate's Recommendation (SJAR) and the Addendum to the SJAR warrant set aside of the punitive discharge, or in the alternative, remand for new post-trial processing. Finding no error materially prejudicial to Appellant's substantial rights, we affirm.

## I. BACKGROUND

Appellant enlisted in the Air Force on 16 May 1960. He received training in radio repair, and subsequently began duty in education and training. In 1970, Appellant was accepted into the Air Force Office of Special Investigations (AFOSI) career field, and cross-trained to be a Special Agent. He performed training at Bolling AFB in Washington, D.C., and was assigned to a detachment in a suburb of Philadelphia, Pennsylvania, where he moved with his wife.

Appellant and his wife struggled with marital and financial problems. They separated pending divorce, and Appellant took a second job as a security manager at a department store where Appellant met his current wife. Although he was due to separate from the Air Force within just three months, Appellant felt overwhelmed balancing two jobs, his marriage, and a new relationship. After completing 11 years and 9 months on active duty, on or about 14 February 1972, at age 30, Appellant absented himself from the AFOSI detachment

———————————

[2] *See United States v. Mason*, 19 M.J. 274 (C.M.A. 1985) (mem.).

and began a new life in Maine. Appellant discarded all his military belongings and destroyed his military identification card and AFOSI credentials. At the time Appellant deserted, the United States was at war in Southeast Asia; however, avoiding combat service played no part in Appellant's decision to leave.[3]

Forty-five years later, on 21 March 2017, after Appellant worked different jobs in several states, Special Agents of the AFOSI apprehended Appellant at his home in Ocala, Florida. Appellant, now aged 75, was restricted to quarters on MacDill AFB, where he remained until his court-martial. Appellant unconditionally waived his right to a preliminary hearing pursuant to Article 32, UCMJ, 10 U.S.C. § 832, and on 10 April 2017, was arraigned, pleaded guilty, and was sentenced in a military judge-alone trial.

The same day that Appellant's court-martial adjourned, he was examined by a base flight surgeon, Dr. JS, and found medically fit for confinement. Dr. JS signed the medical certificate on the confinement order, Department of Defense Form 2707,[4] certifying that the sentence to confinement will not produce serious injury to the prisoner's health. She added a handwritten caution, "[Patient] must take prescription medication for the member's safety." Due to concerns about Appellant's age, fitness for duty, and whether the Hillsborough County Jail (HCJ), in Tampa, Florida, would administer Appellant's medications, the decision was made to confine Appellant to the quarters on MacDill AFB that he had occupied during his restriction to base. MacDill AFB personnel held off transferring Appellant to the custody of the county until the base had received assurances from the HCJ that Appellant would continue to receive required medications.

The day after Appellant's court-martial, Appellant had yet to in-process at the county jail when trial defense counsel moved for appropriate relief, and asked the military judge to order that Appellant not be confined at HCJ under conditions that would violate Appellant's post-trial confinement rights under Articles 12, 55, and 58, UCMJ, 10 U.S.C. §§ 812, 855, 858. Additionally, the Defense asked the military judge to order three days confinement credit for each day that Appellant would be subjected to unlawful post-trial confinement. That afternoon, at a post-trial hearing on this motion, Dr. JS testified that she observed Appellant to be very dehydrated and "fragile," and noted that he

---

[3] The Paris Peace Accords, *Agreement on Ending the War and Restoring Peace in Vietnam*, signed 27 January 1973, called for a cease fire and an end to military activities. *See United States v. Reyes*, 48 C.M.R. 832, 835 (A.C.M.R. 1974)*; see also*, *United States v. Robertson*, 1 M.J. 934 (N.C.M.R. 1976).

[4] Department of Defense Form 2707, *Confinement Order* (Mar. 2006).

should have been in a wheelchair when she performed his confinement physical the previous afternoon. She testified that placing Appellant in confinement without properly administered medications would be a "significant risk," medically negligent, and at worst, Appellant could have a coronary event, a stroke, or die. However, Dr. JS also noted, "I think the risk can be mitigated with proper communication, with his medications, with keeping a careful eye on him and making sure that he gets plenty of fluids to drink and not overstressing him cardiovasculary [sic] . . . ." Unaware that Appellant had been confined overnight on base, Dr. JS relayed that earlier that day she had called the physician at HCJ on her own accord to make sure Appellant was getting his medications. The physician expressed concern about Appellant's age and medical condition, and wanted to know when he would arrive at the county jail. Dr. JS further testified that she had no reason to be concerned that the HCJ would be incapable of providing Appellant medical care as a result of the conversation.

Next, Staff Sergeant (SSgt) LM, who served as the noncommissioned officer in charge (NCOIC) of confinement at MacDill AFB, testified that because of Appellant's military status, the HCJ would place Appellant in administrative segregation where Appellant would be confined to a cell separate from the general population. The HCJ would do this to avoid the prohibition against housing Appellant with foreign nationals in violation of Article 12, UCMJ, 10 U.S.C. § 812. She testified that Appellant would have one hour of recreation time outside his cell every 24 hours, and that even if Appellant were to be incarcerated in a military confinement facility he would, similarly, be placed in administrative segregation for a minimum of 24 hours. SSgt LM testified that she had spoken to the charge nurse that morning who relayed that the HCJ had Appellant's required medications on hand and could accommodate Appellant's medication needs.

At the conclusion of the hearing, the military judge ruled that Appellant failed to meet his burden to show a violation of Articles 12, 55, or 58, UCMJ, and that neither unusual nor egregious circumstances excused Appellant's failure to exhaust administrative remedies before seeking judicial relief for unlawful post-trial punishment. In clemency, Appellant and his trial defense counsel cited the conditions of Appellant's post-trial confinement as among the reasons why the convening authority should disapprove the adjudged fine, and disapprove the dishonorable discharge or, in the alternative, that it be mitigated to a bad-conduct discharge. The convening authority approved the dishonorable discharge and granted clemency by disapproving the fine.

## II. DISCUSSION

### A. Conditions of post-trial confinement

Before us, Appellant renews his claim made at the post-trial hearing and again in clemency that the conditions of post-trial confinement at HCJ violated his rights in three respects. First, he claims that the HCJ deliberately withheld his prescribed medications, thereby denying him his right to necessary medical care under the Eighth Amendment to the United States Constitution[5] and Article 55, UCMJ. Second, Appellant confirms he was placed in solitary confinement to avoid immediate association with foreign nationals in the general prison population. As a consequence, Appellant claims he was provided with less comforts than an inmate in the general population in violation of Article 58, UCMJ. Third, Appellant avers that this court should grant relief as part of our sentence appropriateness determination under Article 66(c), UCMJ, 10 U.S.C. § 866(c). *See United States v. Gay*, 74 M.J. 736 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016) (providing sentence relief for post-trial confinement conditions that did not constitute a violation of either the Constitution of the United States or Article 55, UCMJ). Appellant asks us to disapprove his dishonorable discharge as meaningful relief and to motivate the Government to ensure proper treatment of military members in civilian confinement facilities. We conclude that even if the facts as asserted by Appellant are true, he failed to meet his burden to establish grounds for relief, and we decline to grant Article 66(c) relief.

In a sworn declaration, Appellant describes the 37 hours[6] he was confined at the HCJ. He states that at the time he in-processed the jail on 11 April 2017 he was a 75-year-old cancer survivor who had suffered two heart attacks. He had been prescribed medication to control his blood pressure after double-bypass, open-heart surgery in 1997. He informed the clerk of the dosages and times that were written on the prescription bottles before surrendering them. Appellant declares he was placed in a cold, solitary confinement cell with 24-hour illumination, and given a thin, hard mattress, and no pillow. He claims he was denied reading material because he was in solitary confinement. Appellant avers he was never given his prescription medications—ordered to be taken in the morning and evening—despite repeated requests. He states that at 0900 on 12 April 2017, a guard gave him water and a ground-up substance,

---

[5] U.S. CONST. amend. VIII.

[6] Appellant had begun serving his second day of confinement when he in-processed the HCJ on 11 April 2017. He had received 21 days credit for pretrial restriction tantamount to confinement, which combined with credit for good time, resulted in his release on 13 April 2017. All told, Appellant spent about 37 hours confined at the county jail over the course of three days.

and told him to swallow it. The substance tasted terrible and Appellant could not ingest it. In the afternoon another guard came to his door and gave Appellant aspirin. Appellant declares he feared that he might suffer a heart attack, stroke, or death because of his age, frail health, sleepless nights, stress, and above all, not being able to take his medications. Appellant completed his sentence to confinement on 13 April 2017, and at 0730, was released to his unit.

In response, the Government has provided a sworn statement from a detention corporal for the Hillsborough County Sheriff's Office. He states that per agreement with MacDill AFB, Appellant was confined separate from the general population in a single-person cell. The cell has a bed, desk, toilet/sink combination, and a window looking out into a common area consisting of an enclosed shower, telephone, information kiosk, and mounted television. Appellant's type of cell is also used to confine other inmates that need to be separated from the general population for various reasons that could include inmates in protective custody, high profile inmates, and disciplinary inmates. He declares all inmates held in single cells, like Appellant, are provided day room access and the opportunity to shower at a minimum of three times weekly. They may also participate in outdoor recreation three times a week. According to Appellant's medical records, he was evaluated by medical personnel during the booking process and "[p]rescription medication requirements were noted, and subsequent medication was distributed and recorded." The detention corporal states that the facility maintains a grievance process by which inmates may lodge complaints, and during his stay, Appellant did not file a complaint about the conditions of his confinement.

The Government also provided a sworn declaration from SSgt LM who had testified at the post-trial hearing. SSgt LM repeated that in discussions with the HCJ, "we felt assured that [Appellant] would receive his medications while confined . . . ." SSgt LM states that Appellant never complained to her about his care and treatment at the HCJ while confined or after release.

### 1. Relief under the Eighth Amendment and Article 55, UCMJ

We first address Appellant's claim that the HCJ deliberately failed to properly administer his prescribed medications for a heart condition and to control high blood pressure, thereby denying him his right to necessary medical care under the Eighth Amendment and Article 55, UCMJ. We conclude that

even if the facts as asserted by Appellant are true, he failed to meet his burden of establishing grounds for relief.[7]

We review de novo whether the facts alleged establish cruel and unusual punishment, including where that punishment allegedly occurred in a civilian facility. *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (citation omitted). "Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, we apply the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, UCMJ, except where legislative intent to provide greater protections under Article 55, UCMJ, is apparent." *Gay*, 74 M.J. at 740 (citing *United States v. Avila*, 53 M.J. 99, 101 (C.A.A.F. 2000)).

The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners," whether manifested by prison guards "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (citation omitted). However, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. "Deliberate indifference" requires that the responsible official must be aware of an excessive risk to an inmate's health or safety and disregard that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842 (citation omitted). However, "prison officials who lack[ ] knowledge of a risk cannot be said to have inflicted punishment . . . ." *Id.* at 844.

In the present case, Appellant claims he did not receive necessary heart and blood pressure medications during the 37 hours he was confined at the HCJ. We have considered Appellant's claim of a lack of responsiveness on the part of prison officials—apparent from Appellant's declaration—that may have caused an unwarranted neglect of Appellant's medical needs even for the brief time that he was confined. However, the record lacks evidence that any prison official was aware of a substantial risk of serious harm to Appellant's health or safety and disregarded that risk. We find that Appellant has not presented evidence to establish wrongful intent, namely, that any official failed to properly administer his prescription medications for the purpose of increasing Appellant's suffering or the severity of his sentence. Even if we were to accept

---

[7] Having applied the decisional framework announced in *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997), for evaluating conditions of post-trial confinement, and considered the entire record, we find we can resolve the issues raised by Appellant without additional factfinding. *See United States v. Fagan*, 59 M.J. 238, 242 (C.A.A.F. 2004).

Appellant's assertions as true, the conduct of prison officials in the record does not rise to the level of "deliberate indifference to serious medical needs of prisoners" proscribed by the Eighth Amendment whether manifested by prison guards "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle* at 104–05. Further, Appellant makes no claim that he suffered any physical harm, and on this record we find none.

Moreover, Appellant's case does not demonstrate any evidence to suggest that he attempted to use any grievance process to address the complaint he now puts forward. The Court of Appeals for the Armed Forces emphasized, "A prisoner must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions." *United States v. Wise*, 64 M.J. 468, 469 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 472 (C.A.A.F. 2001)). This requirement "promot[es] resolution of grievances at the lowest possible level [and ensures] that an adequate record has been developed [to aid appellate review]." *Id.* at 471 (alteration in original) (quoting *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)). Except under some unusual or egregious circumstance, an appellant must demonstrate he or she has exhausted the prisoner grievance process provided by the confinement facility and the right to petition for relief under Article 138, UCMJ, 10 U.S.C. § 938. *White,* 54 M.J. at 471 (citations omitted).

Appellant sought relief from the military judge before he was confined at the HCJ. We are satisfied on this record that neither the military judge nor any Government personnel had reason to conclude that the HCJ would not accommodate Appellant's medication needs while confined. The Defense motion for appropriate relief, though prescient perhaps, did not establish a ripe factual basis for the military judge to grant relief. Consequently, we find that the hearing held before Appellant's transfer was not an exhaustion of administrative remedies required by law. Renewing the concern in Appellant's clemency submission was also inadequate to satisfy this requirement. *See United States v. White*, No. ACM 33583, 1999 CCA LEXIS 220, at *4 (A.F. Ct. Crim. App. 23 Jul. 1999) (unpub. op.), *aff'd*, 54 M.J. 469 (C.A.A.F. 2001). Appellant did not utilize the prison's grievance process or complain to the NCOIC of confinement, and we have no evidence that Appellant petitioned for relief under Article 138, UCMJ. Appellant was required to exhaust his administrative remedies, which he did not do. Appellant argues that he should be excused because he was released before any grievance or complaint could have run its course. However, we are not persuaded that sentence length is sufficiently unusual to excuse compliance. Accordingly, we conclude that Appellant does not warrant relief under the Eighth Amendment or Article 55, UCMJ.

**2. Relief under Article 58, UCMJ**

Next, we address Appellant's claim that he was placed in solitary confinement to avoid immediate association with foreign nationals in the general prison population, and as a consequence the conditions were harsher compared to an inmate in the general prison population. Appellant asserts he is due sentence relief for being placed in administrative segregation to avoid a violation of Article 12, UCMJ. We disagree.

At the outset we note that there is no dispute about the material facts in the record. The base confinement NCOIC testified at the post-trial hearing that the county jail would place Appellant in administrative segregation in a cell separate from the general population because of Appellant's military status, and to avoid the prohibition against housing Appellant with foreign nationals in violation of Article 12, UCMJ. Similarly, the county detention corporal states in his sworn declaration that per agreement with MacDill AFB, Appellant was confined separate from the general population in a single person cell. Appellant does not argue that the conditions violated the Eighth Amendment or Article 55, UCMJ. Instead, he claims his Article 58, UCMJ, rights were violated when he was held in solitary confinement because he was a military member.[8]

"No member of the armed forces may be placed in confinement in immediate association with enemy prisoners or other foreign nationals not members of the armed forces." 10 U.S.C. § 812 (2016). Article 12 applies to military members held in civilian state or federal confinement facilities in the United States. *United States v. McPherson*, 73 M.J. 393, 394 (C.A.A.F. 2014). Article 58(a), UCMJ, provides that military members serving a sentence to confinement may be confined in a civilian facility, but persons so confined "are subject to the same discipline and treatment as persons confined or committed by the courts of the United States or of the State, District of Columbia, or place in which the institution is situated." 10 U.S.C. § 858(a). "Military confinees can--and must--receive treatment equal to civilians confined in the same institution, while being confined separately from foreign nationals . . . ." *McPherson*, 73 M.J. at 396.

The crux of Appellant's claim for relief is that civilian prisoners of comparable lot received better treatment, and that the conditions of Appellant's con-

---

[8] Though not dispositive to how this court rules, we note that Appellant did not include in his assignment of error, as he alleged at the post-trial hearing and again in clemency, that action by officials to avoid Appellant's immediate association with foreign nationals in the general population was cruel and unusual punishment in violation of the Eighth Amendment and Article 55, UCMJ.

finement were made comparatively harsh because of his military status. However, the record does not allow this court to evaluate the conditions of any inmate's confinement other than Appellant's own; we are left to speculate what comparable "discipline and treatment" a civilian of like circumstances—temperament, age, physical and mental condition, rehabilitation potential, booking and release dates, etc.—would have experienced in the same 37 hours of confinement. Thus, we cannot conclude that Appellant did not receive treatment that was comparable to civilians confined in the same institution, if there were comparable civilians. Further, Appellant has not shown that he has exhausted the prisoner-grievance system and petitioned for relief under Article 138, UCMJ. *Wise*, 64 M.J at 469. Accordingly, we find that Appellant's confinement conditions do not warrant relief under Article 58, UCMJ.

### 3. Relief under Article 66(c), UCMJ

Appellant also urges this court to exercise its authority under Article 66(c), UCMJ, to provide sentence relief for the same conditions of post-trial confinement. Under Article 66(c), we have broad authority and the mandate to approve only so much of the sentence as we find appropriate in law and fact, and we could grant sentence relief even without finding an Eighth Amendment, Article 55, or Article 58 violation. *Gay*, 74 M.J. at 742–43; *see United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002). When this court considers judicial relief under Article 66(c), UCMJ, for conditions of post-trial confinement, we have not required an appellant to demonstrate that he has, absent unusual or egregious circumstances, previously exhausted administrative remedies. *See United States v. Kyc*, No. ACM S32391, 2017 CCA LEXIS 376, at *13–14 (A.F. Ct. Crim. App. 30 May 2017) (unpub. op.). We will instead consider the entire record, and give "significant weight" to an appellant's failure to seek administrative relief prior to invoking judicial intervention, while recognizing the limits of our authority. *Id.*; *United States v. Bailey*, No. ACM S32389, 2017 CCA LEXIS 604, at *11 (A.F. Ct. Crim. App. 11 Sep. 2017).

However, after considering the facts and circumstances, and for all the reasons previously stated, we do not conclude that Appellant should receive sentence relief under Article 66(c), UCMJ. "Only in very rare circumstances do we anticipate granting sentence relief when there is no violation of the Eighth Amendment or Article 55, UCMJ." *United States v. Ferrando*, 77 M.J. 506, 517 (A.F. Ct. Crim. App. 2017) (citations omitted); *cf. United States v. Nerad*, 69 M.J. 138, 145–47 (C.A.A.F. 2010) (holding that despite our significant discretion in reviewing the appropriateness of a sentence, this court may not engage in acts of clemency).

**B. The Staff Judge Advocate's Recommendation and Addendum**

Appellant sought clemency from the convening authority for the same conditions of post-trial confinement at the HCJ which this court considered on appeal. In his Addendum to the SJAR, the Acting Staff Judge Advocate (ASJA) made the following remark concerning Appellant's clemency submission:

> [Appellant] requests that you disapprove the fine and either disapprove the dishonorable discharge or reduce it to a bad conduct discharge. Part of the justification for that request is the allegation that [Appellant's] rights were violated during his approximately 37-hour period of confinement at the Hillsborough County Jail. As part of that argument, the defense alleged that the military judge erred when he denied their post-trial motion regarding [Appellant's] confinement. I have carefully considered these allegations and find them to be without merit.

Appellant argues that the Addendum to the SJAR contained error that materially prejudiced him in that the ASJA incorrectly commented that Appellant's complaints about his conditions of confinement, made in his clemency request, were without merit.

We review de novo alleged errors in post-trial processing. *See United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000); *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004). The threshold for establishing prejudice in post-trial processing is low, but an appellant must make at least "some colorable showing of possible prejudice." *United States v. Scalo*, 60 M.J. 435, 436–37 (C.A.A.F. 2005) (quoting *Kho*, 54 M.J. at 65).

Whether Appellant's confinement conditions violated the Eighth Amendment, or Articles 55 or 58, UCMJ, is a question of law. Therefore, it was not error for the ASJA to disagree with Appellant and summarize the claim as being "without merit." Rule for Courts-Martial (R.C.M.) 1106(d)(4) requires the staff judge advocate to state whether corrective action on the findings or sentence should be taken when the defense clemency submissions allege legal error. Such response "may consist of a statement of agreement or disagreement with the matter raised by the accused. An analysis or rationale for the staff judge advocate's statement, if any, concerning legal error is not required." R.C.M. 1106(d)(4). Finding no error in either the SJAR or its Addendum, we decline to grant relief.

## III. CONCLUSION

The finding of guilt and the sentence are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED.**

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court