# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40067**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Nathaniel A. JACKSON**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 25 May 2022

———————————

*Military Judge:* James R. Dorman (pretrial motion); Bryan D. Watson (pretrial motions); Matthew P. Stoffel (arraignment); Elizabeth M. Hernandez.

*Sentence:* Sentence adjudged on 12 November 2020 by GCM convened at Joint Base San Antonio-Randolph, Texas. Sentence entered by military judge on 11 March 2021: Dishonorable discharge, confinement for 36 months, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.

*For Appellant:* Major Christopher C. Newton, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Major Allison R. Gish, USAF; Major John P. Patera, USAF; Mary Ellen Payne, Esquire.

Before POSCH, CADOTTE, and GOODWIN, *Appellate Military Judges*.

Judge GOODWIN delivered the opinion of the court, in which Senior Judge POSCH and Judge CADOTTE joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

GOODWIN, Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of one charge and six specifications of sexual abuse of a child in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b.[1,2] The military judge sentenced Appellant to a dishonorable discharge, confinement for 36 months,[3] forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand.

On appeal, Appellant raises three issues. Appellant's first assignment of error alleges the conditions of his post-trial confinement were cruel and unusual under the Eighth Amendment to the United States Constitution[4] and Article 55, UCMJ, 10 U.S.C. § 855, and also violated Articles 12 and 58, UCMJ, 10 U.S.C. §§ 812, 858. Appellant's second assignment of error alleges the convening authority abused his discretion when he declined to disapprove Appellant's total forfeitures and/or reduction to the grade of E-1. Appellant's third assignment of error alleges his sentence was inappropriately severe.[5] Finding no error materially prejudicial to a substantial right of Appellant, we affirm the findings and sentence as entered.

---

[1] All references in this opinion to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*). Unless otherwise stated, all other references to the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*) because the offenses were referred to trial after 1 January 2019.

[2] Appellant was charged with nine specifications of sexual abuse of a child. Eight specifications alleged conduct prior to 1 January 2019, and one specification alleged conduct after 1 January 2019. By virtue of being charged with offenses committed both before and after 1 January 2019, Appellant had the option—which he exercised—to be sentenced under the sentencing rules in effect on 1 January 2019 pursuant to Rule for Courts-Martial 902A (2019 *MCM*). In accordance with the terms of the plea agreement, the Government dismissed three specifications, including the one specification alleging conduct after 1 January 2019. The plea agreement provided for a sentencing range of between 18 and 36 months' confinement per specification to be served concurrently.

[3] Specifically, the military judged sentenced Appellant to be confined for 30 months each on Specifications 1–4, and 6, and to be confined for 36 months each on Specifications 7–8.

[4] U.S. CONST. amend. VIII.

[5] Appellant's second and third assignments of error are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

## I. BACKGROUND

During the charged timeframe, Appellant met three 14-year-old girls online to whom he sent indecent sexual messages and exposed his genitalia. He masturbated while on video chat in front of one of them. Appellant began online messaging victims KL and JD in July 2017. KL and JD were friends, and both lived in the same city. KL and JD both told Appellant their ages prior to the charged offenses. On 12 July 2017, Appellant had two three-way video chats with KL and JD that totaled approximately an hour and a half.

Appellant also messaged the victims individually, using extremely graphic, detailed, and sexually explicit language. In addition to sending multiple explicit messages, Appellant sent two pictures of his erect penis to KL's mobile phone. Appellant also masturbated during a video chat with KL and watched JD and KL masturbate during the same video chat.[6]

In early 2018, Appellant met the third 14-year-old girl, KC, online.[7] Appellant messaged KC using multiple online communication applications and eventually suggested they use Facebook Messenger so they could communicate while he was on duty at the base command post. KC told Appellant she was 14 years old within the first one or two months of their initial communication. Appellant sent KC between 30 and 50 photographs of his genitals and masturbated in front of her on camera numerous times. Appellant also requested and received pictures of KC's breasts and pictures of KC masturbating. Appellant saved more than 100 images of KC on his phone, including pictures of her exposed breasts, and partially nude screenshots from a video call with her.

KC's older sister[8] discovered that KC and Appellant were communicating. Believing Appellant was an adult and that the communication was inappropriate, KC's sister messaged Appellant using KC's Facebook account and told him to stop contacting KC because she was only 15 years old at the time. KC then blocked Appellant on all communication applications they had previously used. About two months after KC blocked his communications, Appellant created a new account and reached out to KC again. Appellant and KC communicated for an additional four to five months using the new account.

---

[6] This court has chosen not to disclose the full extent of Appellant's communications due to the graphic nature of the messages and privacy concerns for his victims.

[7] KC was 14 years old when she and Appellant met. However, she turned 15 years old during the course of their online communications.

[8] Appellee's answer to Appellant's brief states that KC's mother discovered the communication between Appellant and KC. The stipulation of fact states that it was KC's older sister who discovered the communications.

## II. DISCUSSION

### A. Appellant's Post-trial Confinement Conditions

#### 1. Additional Background

Appellant alleges his Article 55, UCMJ, and Eighth Amendment rights were violated in two ways: through denial of medical care at the Comal County Jail and through solitary confinement at the Joint Base San Antonio-Lackland confinement facility. Appellant also alleges his Articles 12 and 58, UCMJ, rights were violated through solitary confinement and confinement with foreign nationals while at the Comal County Jail, respectively.

After findings and sentencing, Appellant entered confinement on 12 November 2020. That same day, Air Force confinement officials transferred Appellant to the Comal County Jail, located in Texas, where he remained confined for 40 days until his transfer to the confinement facility at Joint Base San Antonio-Lackland, Texas on 21 December 2020.

When Appellant arrived at the Comal County Jail, he was initially confined alone as part of the jail's coronavirus (COVID) mitigation procedures. On 16 November 2020, Appellant moved into the jail's "general population" after completing the jail's COVID protocol. Appellant alleges that, while in the jail's general population, jail staff confined him with two foreign nationals who were awaiting deportation for statutory rape. The Comal County Jail Assistant Jail Administrator, Captain JM, confirmed that Appellant was housed with at least one foreign national while in general population. Initially, Appellant moved to a 4-inmate cell within a larger 24-inmate cell block that included a common day room, showers, and toilets. On 28 November 2020, Appellant moved to another cell block due to a mechanical issue in his cell.[9] This cell block housed the same number of inmates and had the same amenities, but the sleeping area was an open bay with 12 bunk beds instead of smaller four-person cells. As such, Appellant was no longer segregated from post-trial detainees.

On 6 December 2020, Appellant made suicidal comments to jail staff and was moved to a "violent control cell," which is a padded cell within the jail's medical wing. While in the medical wing, Appellant punched a wall, fracturing his hand. On 8 December 2020, the jail's medical team cleared Appellant to leave the medical wing. However, the jail medical team assigned Appellant to a single inmate cell with its own bed, shower, toilet, and desk because of the cast on his fractured hand. Appellant remained assigned to this cell for the duration of his time at the jail.

---

[9] An affidavit drafted by Captain JM states that the date was "11/28/21." We believe this is a scrivener's error and find that the actual date was 28 November 2020.

The Comal County Jail contracts with a private company to provide inmate medical care. Immediately after punching the padded wall in the violent control cell, Appellant reported hand pain. Although Appellant claims "the jail refused to provide [him with] medical care despite asking for it repeatedly," jail staff notified the prison's medical service, which evaluated Appellant the same day and ordered radiology scans and an orthopedic consultation. Also on the same day, jail staff sent Appellant's X-ray results and the medical charts associated with his hand injury to a military medical liaison. Three days later, military personnel escorted Appellant from the jail to Wilford Hall Medical Center where he received a medical consultation by an Air Force physician. The record contains no evidence of additional requests for medical attention. The record also contains no corroboration of Appellant's claim that his hand has not healed properly or that he received delayed treatment.

Appellant claims to have filed "at least one grievance" while at the Comal County Jail. Appellant's filed "Request/Grievance" form was attached to Captain JM's affidavit and dated 11 December 2020. The "Grievance/Request" form contains four blocks where inmates may indicate whether their communication is a "Request," a "Grievance," involves a "Medical" issue, or involves something in the "Other" category. On this form, Appellant checked the "Request" block only and asked to be moved back to general population from the isolated cell. Jail staff denied Appellant's move request because Appellant had a cast on his hand.

Appellant was transferred to the Joint Base San Antonio-Lackland confinement facility on 21 December 2020 and was classified as a maximum custody status inmate. Factors leading to this classification included Appellant's prior suicide attempts, the suicidal statement made at the Comal County Jail, his self-inflicted hand fracture while at the jail, and the seriousness of his offenses. According to Joint Base San Antonio-Lackland Confinement Officer GR, while in maximum custody status, Appellant spent approximately 22 hours per day in his cell. According to Appellant, he often spent 23 hours per day in his cell.[10] During his one hour per day of recreation time, Appellant had access to movies, games, books, outdoor recreation, the ability to make phone calls, and time to interact with other maximum custody status inmates. On four separate occasions, Appellant requested and received additional physical fitness and/or "radio" time outside the normal times. Contrary to his allegations that he complained about solitary confinement and filed grievances about additional recreation time, the record contains no evidence of any grievances or requests

---

[10] Officer GR's declaration states that Appellant spent approximately 22 hours per day in his cell, but also states that inmates in "lockdown" status spend at least 22 hours per day in their cell.

other than the previously-mentioned requests for additional physical fitness time. On 4 February 2021, Appellant was transferred to the Naval Consolidated Brig at Joint Base Charleston, South Carolina, to fulfill the remainder of his confinement.

### 2. Law and Analysis

As an initial matter, we considered the declarations from Appellant, Comal County Jail Captain JM, and Air Force Confinement Officer GR to resolve Appellant's claims under the Eighth Amendment and Articles 12, 55, and 58, UCMJ. *See United States v. Jessie*, 79 M.J. 437, 444–45 (C.A.A.F. 2020). To the extent there are contradictions between Appellant's declaration and those of Captain JM and Officer GR, we considered whether a post-trial evidentiary hearing was required to resolve a factual dispute. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. Dubay*, 37 C.M.R. 411, 413 (C.M.A. 1967) (per curiam). We are convinced such a hearing is unnecessary. Even if we resolve any contradictions in Appellant's favor, none of the alleged conditions would result in our granting relief. *See Ginn*, 47 M.J. at 248.

### a. Medical Attention & Article 55, UCMJ, Solitary Confinement

We review de novo whether an appellant has been subjected to impermissible post-trial confinement conditions in violation of the Eighth Amendment or Article 55, UCMJ. *United States v. Wise*, 64 M.J. 468, 473 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001)). "A servicemember is entitled, both by statute and the Eighth Amendment, to protection against cruel and usual punishment." *United States v. Avila*, 53 M.J. 99, 101 (C.A.A.F. 2000) (citations omitted). "[T]he Eighth Amendment prohibits two types of punishments: (1) those 'incompatible with the evolving standards of decency that mark the progress of a maturing society' or (2) those 'which involve the unnecessary and wanton infliction of pain.'" *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976)).

The United States Supreme Court has held that the Eighth Amendment "does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citation omitted). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Id.* (internal quotation marks and citations omitted). The Supreme Court has held that a prison official violates the Eighth Amendment when two conditions are met. The first prong objectively requires the deprivation to be "sufficiently serious." *Id.* at 834. "[A] prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* (internal quotation marks and

citation omitted). The second condition is that the prison official must have a "sufficiently culpable state of mind." *Id.* To satisfy the second prong, the prison official must have displayed "'deliberate indifference' to inmate health or safety." *Id.*

The United States Court of Appeals for the Armed Forces (CAAF) has held that a violation of the Eighth Amendment is shown by demonstrating:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [an appellant's] health and safety; and (3) that [an appellant] "has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ, 10 U.S.C. § 938 [2000]."[11]

*Lovett*, 63 M.J. at 215 (omission and third alteration in original) (footnotes omitted) (quoting *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)). The burden to make this showing rests upon Appellant. *Id.* at 216.

A military prisoner's "burden to show deliberate indifference requires [the prisoner] to show that officials knew of and disregarded an excessive risk to inmate health or safety; the officials must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and they must also draw the inference." *Lovett*, 63 M.J. at 216 (internal quotation marks and alterations in original omitted) (citing *Farmer,* 511 U.S. at 837).

The CAAF emphasized "[a] prisoner must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions." *Wise*, 64 M.J. at 469 (citation omitted). "This requirement promotes resolution of grievances at the lowest possible level and ensures that an adequate record has been developed to aid appellate review." *Id.* at 471 (alterations in original omitted) (citing *Miller*, 46 M.J. at 250). Except under some unusual or egregious circumstance, an appellant must demonstrate he or

---

[11] Article 138, UCMJ, 10 U.S.C. § 938, provides that

> [a]ny member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commissioned officer, who shall forward the complaint to the officer exercising general court-martial jurisdiction over the officer against whom it is made. The officer exercising general court-martial jurisdiction shall examine into the complaint and take proper measures for redressing the wrong complained of; and he shall, as soon as possible, send to the Secretary concerned a true statement of that complaint, with the proceedings had thereon.

she has exhausted the prisoner grievance process provided by the confinement facility and has petitioned for relief under Article 138, UCMJ. *See White,* 54 M.J. at 472. This court reviews the "'ultimate determination' of whether an Appellant exhausted administrative remedies . . . de novo, as a mixed question of law and fact." *Wise,* 64 M.J. at 471 (citing *United States v. Anderson*, 55 M.J. 198, 201 (C.A.A.F. 2001)).

As the CAAF noted in *Wise*, "Since a prime purpose of ensuring administrative exhaustion is the prompt amelioration of a prisoner's conditions of confinement, courts have required that these complaints be made while an appellant is incarcerated." *Id.* (citing *United States v. White,* No. ACM 33583, 1999 CCA LEXIS 220, at *4 (A.F. Ct. Crim. App. 23 Jul. 1999) (unpub. op.), *aff'd,* 54 M.J. 469 (C.A.A.F. 2001)). The CAAF explained that an appellant who only raised confinement complaints in post-release clemency matters has not met the burden of exhausting administrative remedies and the court is not authorized to provide any relief once the member has been released from confinement. *See id.*

We need not determine whether Appellant has met his burden under the first two *Lovett* factors—(1) an objectively, sufficiently serious act or omission resulting in the denial of necessities and (2) deliberate indifference to Appellant's health and safety—as we find he cannot meet his burden on the third factor.

As discussed above, Appellant claims to have filed "at least one grievance" while at the Comal County Jail. However, on his "Request/Grievance" form, Appellant checked the "Request" block, not the "Grievance" block, and asked for relocation back to general population from the isolated block in which he was confined on 11 December 2020. Jail staff denied Appellant's request because Appellant had a cast on his fractured hand. We find that Appellant's request falls short of a grievance regarding lack of medical attention or isolated confinement. While confined at Joint Base San Antonio, Appellant also did not file any grievances, but instead filed only requests for additional physical training time, which were granted.

Appellant concedes that he did not lodge an Article 138, UCMJ, complaint, but argues his circumstances were "unusual and/or egregious" such that this court should address whether constitutional and statutory violations occurred despite Appellant's failure to exhaust his administrative remedies. Appellant argues that his civilian confinement status likely caused him to be unaware that he could seek relief from military authorities. Appellant further argues that an Article 138 complaint would have been futile because the same commander who declined to grant him clemency would have been the commander deciding the Article 138 complaint. We disagree with Appellant's position and

do not find his circumstances unusual or egregious as they pertain to his claims of lack of medical treatment and solitary confinement.

Appellant's circumstances do not excuse him from the *Lovett* requirement of actually exhausting administrative remedies. Exhaustion requires Appellant demonstrate that two paths of redress have been attempted without satisfactory result. *Wise*, 64 M.J. at 471. Although Appellant filed a request with the Comal County Jail for relocation back to general population from the medical wing, Appellant never filed a grievance or Article 138 complaint about lack of medical treatment or solitary confinement. Finding that Appellant failed to sustain his burden of exhausting his administrative remedies, Appellant is not entitled to relief under either the Eighth Amendment or Article 55, UCMJ.

### b. Article 58, UCMJ, Solitary Confinement

This court also reviews de novo Article 58, UCMJ, issues. *United States v. Burrell*, No. ACM S32523, 2019 CCA LEXIS 371, at *9 (A.F. Ct. Crim. App. 12 Sep. 2019) (unpub. op.) (citation omitted). Appellant alleges the conditions of his post-trial confinement violated Article 58, UCMJ. Article 58(a), UCMJ, provides that military members serving a sentence to confinement may be confined in a civilian facility, but persons so confined "are subject to the same discipline and treatment as persons confined or committed by the courts of the United States or of the State, District of Columbia, or place in which the institution is situated." 10 U.S.C. § 858(a).

As with alleged violations of the Eighth Amendment and Article 55, UCMJ, prisoners must first exhaust administrative remedies before invoking judicial intervention to remedy alleged violations of Article 58(a), UCMJ. *See, e.g.*, *United States v. Damm,* No. ACM 39399, 2019 CCA LEXIS 283, at *14 (A.F. Ct. Crim. App. 21 Jun. 2019) (unpub. op.); *United States v. Lemburg*, No. ACM 39261, 2018 CCA LEXIS 424, at *17–18 (A.F. Ct. Crim. App. 30 Aug. 2018) (unpub. op.).

Appellant does not cite any additional reasons why this court should excuse his failure to exhaust administrative remedies regarding his solitary confinement. Consistent with our finding above, as it pertains to his solitary confinement, Appellant's situation is neither unusual nor egregious. Appellant failed to exhaust all administrative remedies, thus his argument fails.

### c. Article 12, UCMJ, Confinement with Foreign Nationals

This court also reviews de novo Article 12, UCMJ, issues. *Wise,* 64 M.J. at 473–74. We review factual findings to determine if they are clearly erroneous, "but the 'ultimate determination' of whether an [a]ppellant exhausted administrative remedies is reviewed de novo, as a mixed question of law and fact." *Id.* at 471 (citation omitted). Appellant alleges the conditions of his post-trial

confinement at the Comal County Jail violated Article 12, UCMJ, because he was confined with foreign nationals.

On this issue, Appellant does offer additional reasons why this court should excuse his failure to exhaust administrative remedies. Appellant argues that he was unaware of the rule prohibiting U.S. servicemembers from being confined with foreign nationals until after he arrived at the Joint Base Charleston confinement facility.

In *United States v. Alexander-Lee,* No. ACM S31784, 2012 CCA LEXIS 95, at \*10 (A.F. Ct. Crim App. 16 Mar. 2012) (unpub. op.), this court excused an Appellant's failure to exhaust administrative remedies under circumstances where the Appellant had no understanding of his having been confined with foreign nationals and his counsel was likewise unaware of the situation. As a result of his lack of awareness, Appellant in *Alexander-Lee* did not file an Article 138, UCMJ, complaint or exhaust the grievance process. *Id.*

Here, we find strikingly similar circumstances to those addressed in *Alexander-Lee*. Although Appellant and Appellee disagree whether Appellant was housed with one or two foreign nationals, the record clearly establishes confinement with at least one foreign national. According to his assignment of error, Appellant did not discover that he had been confined with a foreign national (or two) until he arrived at the Joint Base Charleston confinement facility, by which time he was no longer able to file a grievance or Article 138, UCMJ, complaint. In *Alexander-Lee*, the Appellant raised the Article 12, UCMJ, issue with the convening authority during clemency. In the instant case, Appellant submitted his clemency matters on 3 December 2020, while he was still confined in the Comal County Jail and before he would have become aware of the Article 12, UCMJ, violation. As in *Alexander-Lee*, we find that Appellant has established circumstances that excuse his failure to exhaust administrative remedies before seeking Article 12, UCMJ, relief.

The Military Justice Act of 2016 (MJA 2016) amended Article 12, UCMJ.[12] Prior to the MJA 2016, Article 12, UCMJ, provided, "No member of the armed forces may be placed in confinement in immediate association with enemy prisoners or other foreign nationals not members of the armed forces." However, as amended, Article 12, UCMJ, provides, "No member of the armed forces may be placed in confinement in immediate association with (1) enemy prisoners;

---

[12] The act is part of the National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114–328, §§ 5001–5542 (23 Dec. 2016).

or (2) other individuals (A) who are detained under the law of war and are foreign nationals; and (B) who are not members of the armed forces."

Captain JM's affidavit establishes that the confinement was in an open bay of 24 inmates which satisfies the meaning of "immediate association"[13] with foreign nationals. According to Appellant, the two foreign nationals with whom he was confined were men awaiting deportation for statutory rape—one of which was of Hispanic origin and the other of Iraqi or Iranian origin. According to Captain JM, Appellant was confined with a Nigerian national. However, Appellant's confinement did not violate the Article 12, UCMJ, in effect at the time (the amended article) since there is no evidence on the record to suggest that the alleged foreign national confined with Appellant was an enemy prisoner or a person detained under the law of war. As such, Appellant's argument fails and no relief is warranted.

### B. Convening Authority Decision on Clemency

#### 1. Additional Background

Appellant next alleges that the convening authority abused his discretion by denying Appellant's clemency request. In post-trial matters, on 3 December 2020, Appellant asked the convening authority to disapprove his reduction to the grade of E-1 and forfeitures for the benefit of Appellant's mother or, in the alternative, for his own benefit. On 17 December 2020, the convening authority denied the clemency request, finding Appellant failed to meet "the burden of showing that the interest supporting disapproval outweigh[s] the interest of the imposition of the punishment on its effective date."

#### 2. Law and Analysis

The convening authority was authorized to "disapprove, commute, or suspend" that portion of the Appellant's sentence that consisted of reduction to the grade of E-1 and forfeitures, either "in whole or in part." Article 60(c)(2)(B), UCMJ, 10 U.S.C. § 860(c)(2)(B) (2016 *MCM*); *see also* Article 60(c)(4)(A), UCMJ, 10 U.S.C. § 860(c)(4)(A) (2016 *MCM*) (limiting convening authority's powers with respect to adjudged confinement and punitive discharges). In this court's, view, the convening authority clearly indicated that Appellant failed to persuade him to grant relief that Appellant intended to benefit his mother or himself. The convening authority did not abuse his discretion by denying Appellant's clemency request and we have determined that no relief is warranted.

---

[13] The "immediate association" language means that military members can be confined in the same detention facility as a foreign national but they have to be segregated into different cells. *Wise*, 64 M.J. at 475.

## C. Sentence Appropriateness

Appellant finally argues that the length of confinement adjudged is inappropriately severe. We are not persuaded and accordingly deny relief.

### 1. Additional Background

Appellant presented significant mitigating factors during sentencing. Specifically, Appellant had an absent father during his formative years and two of his role models passed away while he was still at a young age. Appellant also witnessed his mother being robbed when he was eight years old. Appellant was an above average duty performer, having participated in a vice-presidential event at Yokota Air Base, Japan, promoting to the rank of Senior Airman (E-4) early, and being rated an "outstanding performer" during a base inspection. Victim KL messaged Appellant prior to his court-martial convening telling him that she did not want to testify against him and that she had told a detective that she wanted the charges involving her dismissed. KL did not provide a victim impact statement during sentencing.

### 2. Law

This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We "may affirm only . . . the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[ ], on the basis of the entire record, should be approved." Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (citations omitted). We consider whether the Appellant's sentence was appropriate "judged by 'individualized consideration' of the [Appellant] 'on the basis of the nature and seriousness of the offense and the character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180–81 (C.M.A. 1959)). Although we have broad discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

A Court of Criminal Appeals is "required to engage in sentence comparison only 'in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). When arguing sentence disparity and asking this court to compare his sentence with the sentences of others, an appellant bears the burden of demonstrating those other

cases are "closely related" to his, and if so, that the sentences are "highly disparate." *See United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). In *Lacy*, our superior court observed,

> Under Article 66(c), [UCMJ, 10 U.S.C. § 866(c),] Congress has furthered the goal of uniformity in sentencing in a system that values individualized punishment by relying on the judges of the Courts of Criminal Appeals to "utilize the experience distilled from years of practice in military law to determine whether, in light of the facts surrounding [the] accused's delict, his sentence was appropriate. In short, it was hoped to attain relative uniformity rather than an arithmetically averaged sentence."

*Id.* (second alteration in original) (quoting *United States v. Olinger*, 12 M.J. 458, 461 (C.M.A. 1982) (additional citation omitted)). This court's sentence appropriateness analysis first focuses on whether an appellant has demonstrated a case that is "closely related" to his own. *See id.* Cases are closely related when, for example, they include "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared . . . ." *Id.* If an appellant carries that burden, then the Government must show a rational basis for the sentence differences. *Id.*

### 3. Analysis

We first examine Appellant's assertion that his sentence was inappropriately severe when compared to "other Air Force members [who] received far less confinement for much more serious offenses involving non-consensual touching of another in the form of abusive sexual contact, sexual assault, and child pornography." However, Appellant did not identify a case that is closely related to his own that would then require the Government to show a rational basis for any sentence differences. *See Lacy*, 50 M.J. at 288.

Despite Appellant not having met his burden to demonstrate a case that is closely related to his own for comparison, we nonetheless "utilize the experience distilled from years of practice in military law" as our superior court permits. *See id.*; *Ballard*, 20 M.J. at 286. We have also given individualized consideration to Appellant, the nature and seriousness of his offenses, his record of service, and all other matters contained in the record of trial.

In addition to matters in extenuation and mitigation, evidence at trial showed that Appellant sought out three 14-year-old girls for sexual exploitation. Appellant sent them extremely detailed and explicit sexual messages. Appellant also sent photographs of his penis and requested and received partially nude photographs from them. Appellant masturbated on camera and requested that the victims do the same. After being "caught" by one victim's older

sister and being blocked from communication with that victim, Appellant created a new method of communication and continued the relationship. Although Appellant's adjudged sentence included the maximum amount of confinement available under his plea agreement—36 months—without the plea agreement and based on the offenses to which he pleaded guilty, Appellant would have faced a maximum confinement period of 90 years.[14] Finally, Appellant's arguments are ones already considered by the convening authority and military judge. Although we have broad discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *Nerad*, 69 M.J. at 146. Consequently, we find the approved sentence appropriate and not inappropriately severe.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[14] Appellant's sentence included 30 months confinement for four specifications and 36 months of confinement for two specifications. In accordance with the plea agreement, all specifications run concurrently with one another.